UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| LOUIS FERRARA, MELISSA FERRARA, and NEW ENGLAND ALPACAS,<br><br>        Plaintiffs,<br>v.<br><br>RYEN MUNRO and TRIPPING GNOME FARM, LLC,<br><br>        Defendants. | Civil Action No.<br>3: 16 - CV - 950  (CSH)<br><br><br><br>NOVEMBER 22, 2016 |

**ORDER RE: SUBJECT MATTER JURISDICTION**

**HAIGHT, Senior District Judge:**

**I. BACKGROUND**

Plaintiffs Louis Ferrara, Melissa Ferrara, and New England Alpacas (collectively, "Plaintiffs") bring this action against Defendants Ryen Munro and Tripping Gnome Farm, LLC ("Defendants") for damages "arising from the Defendants' refusal to pay the Plaintiffs commission on the Defendants' sale of certain alpaca[s] to non-party Pamela Brewster and her company Stillmeadow Farm, LLC."[1]  Doc. 1, at 1 (¶ 1).  The Plaintiffs allege that they had a contract with Defendants "under which the Defendants were obligated to pay the Plaintiffs a commission on the sale of alpacas by Defendants to Ms. Brewster and her company during a two-year period ending June 19, 2013." *Id.*, at 1-2 (¶ 1).  With respect to these alpaca sales, however, Defendants have allegedly "repeatedly refused to pay [Plaintiffs] the commission owed."  *Id.*, at 2 (¶ 1).  In their

---

[1] The Court takes judicial notice that an alpaca is "a domesticated species of South American camelid," which resembles a small llama in appearance.  *See* https://en.wikipedia.org/wiki/Alpaca. They are often bred for the fiber of their coats, which is similar to wool.  *Id*.

1

Complaint, Plaintiffs have included the following state law claims against all Defendants: breach of contract, unjust enrichment, breach of the implied covenant of good faith and fair dealing, and violation of Connecticut's Unfair Trade Practices, Conn. Gen. Stat. § 42-110a, *et seq*. In addition, Plaintiffs have asserted a claim for tortious interference with contractual relations against individual defendant Munro.

Due to the fact that Plaintiffs bring solely state law claims, they base the Court's subject matter jurisdiction over this action on diversity of citizenship under 28 U.S.C. § 1332(a)(1). Doc. 1, at 2 (¶ 2). Specifically, they allege that "none of the Plaintiffs are citizens of the same state as any of the Defendants" and the amount in controversy "exceeds the sum or value of seventy-five thousand dollars ($75,000), exclusive of interest and costs." *Id*. However, as set forth below, Plaintiffs' allegations are insufficient to establish diversity jurisdiction.

## II.  DISCUSSION

### A.  Subject Matter Jurisdiction

Pursuant to Article III of the Constitution, a federal court has limited jurisdiction. *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541(1986) (citing *Marbury v. Madison*, 1 Cranch (5 U.S.) 137, 173-80 (1803)). In general, it may only exercise subject matter jurisdiction if either: (1) the plaintiff sets forth a colorable claim arising under the Constitution or federal statute, creating "federal question" jurisdiction, 28 U.S.C. § 1331; or (2) there is complete diversity of citizenship between plaintiff and all defendants and the amount in controversy exceeds $75,000, exclusive of interest and costs, 28 U.S.C. § 1332(a)(1). *Strawbridge v. Curtiss*, 3 Cranch 267, 1806 WL 1213, at *1 (February Term 1806). *See also Da Silva v. Kinsho Int'l Corp.*, 229 F.3d 358, 363 (2d Cir. 2000) (delineating two categories of subject matter jurisdiction).

It is incumbent on a federal court to determine with certainty whether it has subject matter jurisdiction over a case pending before it. If necessary, the court must consider its subject matter jurisdiction *sua sponte*. *Joseph v. Leavitt*, 465 F.3d 87, 89 (2d Cir. 2006) ("Although neither party has suggested that we lack appellate jurisdiction, we have an independent obligation to consider the presence or absence of subject matter jurisdiction *sua sponte*."), *cert. denied*, 549 U.S. 1282 (2007); *Promisel v. First Am. Artificial Flowers, Inc.*, 943 F.2d 251, 254 (2d Cir. 1991) ("Although we would not normally consider an issue not raised below, the lack of subject matter jurisdiction may be raised at any time, by the parties, or by the court *sua sponte*."), *cert. denied*, 502 U.S. 1060 (1992).[2]

Unlike personal jurisdiction, "subject matter jurisdiction is not waivable." *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700 (2d Cir. 2000). If subject matter jurisdiction is lacking, the action must be dismissed. *See* Fed. R. Civ. P. 12(h)(3); *Lyndonville*, 211 F.3d at 700-01. *See also, e.g., Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.À.R.L.,* 790 F.3d 411, 416-17 (2d Cir. 2015) (district court properly dismisses an action for lack of subject matter jurisdiction if it "lacks the statutory or constitutional power to adjudicate it") (citing *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)); *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.,* 109 F.3d 105, 108 (2d Cir. 1997) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall

---

[2] *See also Univ. of S. Alabama v. American Tobacco* Co., 168 F.3d 405, 410 (11th Cir. 1999) ("a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking"); *Licari v. Nutmeg Ins. Adjusters, Inc.*, No. 3:08mc245(WIG), 2008 WL 3891734, at * 1 (D. Conn. July 31, 2008) ("This Court has a duty to review a plaintiff's complaint at the earliest opportunity to determine whether this Court has subject matter jurisdiction.") (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 107 (2d Cir. 1997) for its holding that a district court may raise the issue of subject matter jurisdiction *sua sponte*).

dismiss the action.") (citing Fed. R. Civ. P. 12(h)(3)); *Lovejoy v. Watson*, 475 F. App'x 792, 792 (2d Cir. 2012) ("Where jurisdiction is lacking . . . dismissal is mandatory.") (quoting *United Food & Commercial Workers Union, Local 919, AFL–CIO v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir.1994)); *Manway Constr. Co. v. Housing Auth. of Hartford*, 711 F.2d 501, 503 (2d Cir. 1983) ("It is common ground that in our federal system of limited jurisdiction any party or the court *sua sponte*, at any stage of the proceedings, may raise the question of whether the court has subject matter jurisdiction; and, if it does not, dismissal is mandatory.").

In the case at bar, Plaintiffs have included solely state law claims in their Complaint. Therefore, there is no arguable basis upon which the Court may assert "federal question" subject matter jurisdiction over this action, 28 U.S.C. § 1331.[3]  Plaintiffs allege that the alternate jurisdictional basis of "diversity of citizenship" exists under 28 U.S.C. § 1332(a).[4]

In order for diversity of citizenship to exist, each plaintiff's citizenship must be diverse from that of all defendants. *See, e.g.*, *St. Paul Fire and Marine Ins. Co. v. Universal Builders Supply*, 409 F.3d 73, 80 (2d Cir. 2005) ("Diversity is not complete if any plaintiff is a citizen of the same state as any defendant.") (citing *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373-74 (1978)). Moreover, "diversity must exist at the time the action is commenced." *Universal Licensing Corp.*

---

[3] 28 U.S.C. § 1331, captioned "Federal question," provides: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

[4] 28 U.S.C. § 1332(a) provides, in relevant part:

The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between –

(1) citizens of different States . . . .

*v. Lungo*, 293 F.3d 579, 581 (2d Cir. 2002). *See also Wolde–Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*, 166 F.3d 59, 62 (2d Cir.1999) ("Satisfaction of the § 1332(a) diversity requirements (amount in controversy and citizenship) is determined as of the date that suit is filed – the 'time-of-filing' rule.").

Furthermore, there must be a minimum amount in controversy exceeding "$75,000, exclusive of interest and costs," 28 U.S.C. § 1332(a). Plaintiffs must allege in good faith that they sustained sufficient damages to invoke the Court's subject matter jurisdiction based on diversity of citizenship. Congress included this jurisdictional amount with the intention of "remov[ing] from the federal courts claims insubstantial in character, which contributed to the mounting backlogs of these courts." *Brown v. Bodak*, 188 F. Supp. 532, 533–34 (S.D.N.Y. 1960) (citing 1958 U.S. Code Congressional and Administrative News, pp. 2594-95). In cases where there is evidence that a plaintiff has inflated damages "solely to exceed the jurisdictional threshold," dismissal by the district court is proper. *Deutsch v. Hewes St. Realty Corp.*, 359 F.2d 96, 100 (2d Cir. 1966) (citing *Brown*, 188 F. Supp. 532).

B.   **Diversity of Citizenship**

   1.   **Citizenship of the Parties**

Plaintiffs Louis Ferrara and Melissa Ferrara allege that they are citizens and residents of the state of Connecticut. Doc. 1, at 2 (¶ 4). An individual's citizenship for diversity purposes is determined by his or her *domicile*, as opposed to residence. *See Palazzo v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000). *See also John Birch Soc. v. Nat'l Broad. Co.*, 377 F.2d 194, 199 (2d Cir.1967) ("it has long been held that a statement of residence, unlike domicile, tells the court only where the parties are living and not of which state they are citizens"). "In general, the domicile of an individual

is his true, fixed and permanent home and place of habitation"—*i.e*, "the place to which, whenever he is absent, he has the intention of returning." *Martinez v. Bynum*, 461 U.S. 321, 331 (1983). Accepting that both Ferraras are domiciled in Connecticut, that state is their state of citizenship.

With respect to "New England Alpacas," however, Plaintiffs have failed to indicate what type of entity it is – *e.g.*, corporation, limited liability company, *etc.* Rather, Plaintiffs simply allege that the "Ferraras do business under the trade name 'New England Alpacas' and have a principal place of business located in Killingworth, Connecticut."[5] Doc. 1, at 2 (¶ 4). If New England Alpacas is actually a corporation, pursuant to 28 U.S.C.§ 1332(c)(1), it "shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." However, if New England Alpacas is a limited liability company, "a limited liability company takes the citizenship of *each of its members*." *Bayerische Landesbank, New York Branch v. Aladdin Capital Mgmt.*, 692 F.3d 42, 49 (2d Cir. 2012) (emphasis added). *See also Wise v. Wachovia Secs, LLC*, 450 F.3d 265, 267 (7th Cir. 2006) ("[t]he citizenship for diversity purposes of a limited liability company . . . is the citizenship of *each of its members*") (emphasis added), *cert. denied,* 549 U.S. 1047 (2006). Put simply, the "citizenship of a limited liability company is not the state in which it is organized or has its principal place of business, but rather, each of the states in which it has members." *Lewis v. Allied Bronze LLC*, No. 07 Civ. 1621(BMC), 2007 WL 1299251, at *1-2 (E.D.N.Y. May 2, 2007) (citing *Handelsman v. Bedford Vill. Assocs. Ltd. P'ship*, 213 F.3d 48, [51-52] (2d Cir. 2000) and remanding removed action for lack of diversity jurisdiction). If New England Alpacas is a limited liability company, the Ferraras have failed to specify the identities and

---

[5] A "tradename" is simply "the name under which a business operates." Black's Law Dictionary (10th ed. 2014). It thus provides "a means of identifying a business . . . to establish goodwill." *Id.*

citizenship of each member of that entity. Citizenship of each member must be known to insure that complete diversity exists in this action between Plaintiffs and Defendants.

With respect to the citizenship of Defendants, Plaintiffs have sufficiently alleged that Defendant "Ryen Munro is a citizen and resident of the State of Maine." Doc. 1, at 3 (¶ 5). However, Plaintiffs have simply described "Defendant Tripping Gnome Farm, LLC, [as] a Maine Limited Liability Company with its primary place of business in Freeport, Maine." *Id.* As set forth *supra*, in order to establish the citizenship of a limited liability company, Plaintiffs must provide the citizenship of each member of that entity. Plaintiffs have alleged that Munro is the "owner, operator, and alter ego" of Tripping Gnome Farm, LLC. *Id.* If that means that Munro is the *sole member* of that limited liability company, Plaintiffs must specify that fact. Absent such an assertion, Plaintiffs must specify the names and citizenship of each member of Tripping Gnome Farm, LLC.

### 2. **Amount in Controversy**

In addition to diversity of citizenship, "[a] party invoking the jurisdiction of the federal court has the burden of proving that it appears to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount": $75,000, exclusive of interest and costs. *Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003) (quoting *Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir.1994)). *See also Chase Manhattan Bank, N.A. v. Am. Nat'l Bank and Trust Co. of Chicago*, 93 F.3d 1064, 1070 (2d Cir.1996) (same). The amount in controversy must thus "appear on the face of the complaint or be established by proof." *Miller v. European Am. Bank*, 921 F. Supp. 1162, 1167 (S.D.N.Y.1996).

This burden is "hardly onerous," however, because the Second Circuit recognizes "a rebuttable presumption that the face of the complaint is a good faith representation of the actual

amount in controversy." *Wolde–Meskel v. Vocational Instruction Project Cmty. Servs., Inc.,* 166 F.3d 59, 63 (2d Cir.1999). *See also Colon v. Rent-A-Ctr., Inc.*, 13 F. Supp. 2d 553, 558 (S.D.N.Y. 1998) ("the amount in controversy is measured strictly from the plaintiff's viewpoint, without regard to the amount at stake for any other party") (citing *Kheel v. Port of N.Y. Auth.*, 457 F.2d 46, 48-49 (2d Cir. 1972), *cert. denied*, 409 U.S. 983 (1972)). This focus on the plaintiff's viewpoint remains the "majority rule" in this Circuit, applying to both removal actions as well as actions filed originally in federal court. *Colon*, 13 F. Supp. 2d at 553 (citing *Cowan v. Windeyer*, 795 F. Supp. 535, 537 (N.D.N.Y.1992)).

In addition to damages, "[a] potential award of attorneys' fees may be considered by the court when determining whether a case involves the jurisdictional minimum." *Gardiner Stone Hunter Int'l v. Iberia Lineas Aereas De Espana, S.A.*, 896 F. Supp. 125, 128 (S.D.N.Y.1995). However, such a consideration is only appropriate if: (1) the attorneys' fees are reasonable and (2) such fees are provided for by contract or state statute. *See Givens v. W.T. Grant Co.*, 457 F.2d 612, 614 (2d Cir. 1972), *vacated on other grounds*, 409 U.S. 56 (1972).[6] *See also Colon v. Rent-A-Ctr., Inc.*, 13 F. Supp. 2d 553, 561 (S.D.N.Y. 1998); *In re Abbott*, 51 F.3d 524 (5th Cir.), *reh'g denied en banc*, 65 F.3d 33 (1995); *Goldberg v. CPC Int'l, Inc.*, 678 F.2d 1365 (9th Cir.), *cert. denied*, 459 U.S. 945 (1982); *Graham v. Henegan*, 640 F.2d 732, 735-36 (5th Cir. 1981), *reh'g denied*, 646 F.2d 566 (5th Cir.1981); *Velez v. Crown Life Ins. Co.*, 599 F.2d 471, 474 (1st Cir.1979).

---

[6] "[I]t is settled that such [reasonable attorneys'] fees may not properly be included in determining the jurisdictional amount unless they are recoverable as a matter of right." *Givens v. W. T. Grant Co.*, 457 F.2d 612, 614 (2d Cir. 1972)(citing Wright, *Federal Courts* § 35, at 119 (1970); 1 Moore's Federal Practice ¶ 0.99 [2] (2d ed. 1964)). "In the absence of a contract or statutory authority, neither of which is to be found here, plaintiffs cannot recover attorneys' fees . . . ." *Givens*, 457 F.2d at 614.

In their Complaint, Plaintiffs allege that "[t]he reasonable value and agreed price of the commissions for which the Defendants have failed and refused to pay will be proven at trial, but in no event is it less than fifty five thousand dollars ($55,000.00)." Doc. 1, at 6 (¶ 33). They then allege that they have "already incurred in excess of twenty five thousand dollars ($25,000.00) in reasonable attorney fees in legal proceedings arising out of the Contract," *id.*, (¶ 35); and they further "expect to incur in excess of thirty thousand dollars ($30,000.00) in reasonable attorney fees in this federal action," *id.*, (¶ 36).  Adding up the alleged damages for unpaid commissions, incurred attorneys' fees, and potential future attorneys' fees, the sum is $110,000.00 ($55,000.00 plus $25,000.00 and $30,000.00), which exceeds the $75,000.00 jurisdictional minimum.

As discussed above, however, the Court may only consider Plaintiffs' attorneys' fees if they are reasonable and provided for by contract or state statute. As to reasonableness of the alleged past and future attorneys' fees (totaling $55,000.00), the Court notes that, in aggregate, these fees equal the amount of damages Plaintiffs seek to recover for unpaid commissions (at least $55,000.00). It is questionable whether such an amount in attorneys' fees, equaling the amount of damages allegedly recoverable, is "reasonable." *See, e.g.*, *Diamond D. Enterprises USA, Inc. v. Steinsvaag*, 979 F.2d 14, 19 (2d Cir.1992) (with respect to reasonableness, "[t]he rule in New York is that an award of fees in excess of the amount involved in a litigation would normally appear to be unreasonable") (citation and internal quotation marks omitted).

In addition, Plaintiffs' allegations regarding their "already incurred" attorneys' fees simply declare the amount of $25,000.00 without providing sufficient factual background. Plaintiffs state that "[t]he Defendants brought suit in the Superior Court, State of Maine against the Plaintiffs arising out of the Contract;" and "[t]he Plaintiffs brought suit in the Superior Court, State of Connecticut

9

against the Defendants arising out of the Contract." Doc. 1, at 6 (¶¶ 34-35). Plaintiffs provide no case names or details of the proceedings and no description as to why the attorneys' fees in these state court proceedings should be recovered in the present action. Furthermore, Plaintiffs detail no work performed by the attorneys and/or dates and hours worked.

As to future or "potential" attorneys' fees, Plaintiffs specify that they expect to incur $30,000 in attorneys' fees and that "Plaintiffs are entitled to reasonable attorney[s'] fees and costs incurred in any legal proceed arising out of the Contract." *Id.*, at 6 (¶¶ 36-37). However, Plaintiffs have neither cited any particular contract terms nor appended "the Contract" at issue to the Complaint. Instead, Plaintiffs simply conclude that Defendants "are jointly and severally liable for the unpaid commissions and damages caused to the Plaintiffs by the breach of the Contract, including, but not limited to, *reasonable attorney fees* and costs *as provided under the Contract*." *Id.*, at 6 (¶ 38) (emphasis added).

Because the total alleged damages (unpaid commissions) is only $55,000.00, the Court cannot find that the Plaintiffs have met the jurisdictional amount for diversity, exceeding $75,000, under 28 U.S.C. § 1332(a), unless the Court may include the alleged "already incurred" attorneys' fees and/or the expected additional attorneys' fees. To do so, the Court must be able to find such attorneys' fees both reasonable and owing to Plaintiffs as a matter of right (by contract or statute). To make such a finding, the Court requires additional information.

### III. CONCLUSION

A federal court has limited subject matter jurisdiction pursuant to Article III of the Constitution. It is thus the Court's duty to determine with certainty whether it has subject matter jurisdiction over this case pending before it. In the absence of subject matter jurisdiction, "the court

must dismiss the action," Fed. R. Civ. P. 12(h)(3).

In the case at bar, with no basis to exercise "federal question" jurisdiction under 28 U.S.C. § 1331, this Court may exercise subject matter jurisdiction only if there is diversity of citizenship, 28 U.S.C. § 1332(a)(1). For such diversity jurisdiction to exist, the citizenship of each plaintiff must be diverse from that of all defendants and "the matter in controversy [must] exceed[ ] the sum or value of $75,000, exclusive of interest and costs," *id*. For the reasons set forth *supra*, the Plaintiffs have failed to properly allege the citizenship of Plaintiff New England Alpacas and Defendant Tripping Gnome Farm, LLC.

Under such circumstances, the Court hereby ORDERS Plaintiff New England Alpacas to submit an affidavit on or before **November 29, 2016**, to establish its citizenship for diversity purposes. In so doing, an officer or owner of New England Alpacas must specify what kind of entity it is (*e.g,* corporation, limited liability company). If it is a corporation, it must provide the "State by which it has been incorporated" and the State in which it has "its principal place of business," 28 U.S.C. § 1332(c)(1). If New England Alpacas is a limited liability company, it must name all of its members and establish the citizenship of each such member. If any member is an individual, New England Alpacas must provide his or her domicile, *Palazzo v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000), which is her or his true, "fixed and permanent home and place of habitation"—*i.e*, "the place to which, whenever he is absent, he has the intention of returning," *Martinez v. Bynum*, 461 U.S. 321, 331 (1983).

Similarly, Defendant Tripping Gnome Farm, LLC must establish its citizenship by submitting an affidavit to the Court on or before **November 29, 2016.** In that affidavit, it must specify the names of each and all of its members and their citizenship(s) for diversity purposes.

Finally, because Plaintiffs' alleged damages, without attorneys' fees, are "in no event . . . less than fifty five thousand dollars ($55,000.00)," Doc. 1, at 6 (¶ 33), their claims fail to meet the jurisdictional minimum – exceeding $75,000, exclusive of interest and costs, 28 U.S.C. § 1332(a) – unless attorneys' fees are included.  Although Plaintiffs have alleged past attorneys' fees of $25,000 and expected attorneys' fees of $30,000, *id.*, at 6 (¶¶ 35-36), they have provided no factual basis to support these amounts.  Plaintiffs are thus ordered to file a joint affidavit on or before **November 29, 2016**, specifying facts to show how these amounts were calculated.  In addition, Plaintiffs must provide the contractual terms which warrant the Court's consideration of these attorneys' fees in determining the jurisdictional amount.  In sum, the Court must be provided with all necessary facts to support a finding that these past and/or projected attorneys' fees are both "reasonable" and based in law (on contract or statutory language).

If, upon review of the affidavits, the Court finds that, at the commencement of this action, there was proper "diversity of citizenship" between Plaintiffs and Defendants and the matter in controversy exceeds $75,000, exclusive of interest and costs, the action may proceed. Alternatively, if there is an absence of subject matter jurisdiction, the Court will dismiss the action without prejudice to Plaintiffs' filing, if so advised, in an appropriate jurisdiction.   All case deadlines are stayed pending the outcome of this Court's determination on subject matter jurisdiction.

It is So ORDERED.

Dated:   New Haven, Connecticut
             November 22, 2016

                                          */s/Charles S. Haight, Jr.*
                                          CHARLES S. HAIGHT, JR.
                                          Senior United States District Judge