## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| LOUIS FERRARA, MELISSA FERRARA, and NEW ENGLAND ALPACAS, <br><br> Plaintiffs, <br> v. <br><br> RYEN MUNRO and TRIPPING GNOME FARM, LLC, <br><br> Defendants. | Civil Action No. <br> 3: 16 - CV - 950  (CSH) <br><br><br><br> JANUARY 13, 2017 |

### SECOND ORDER RE: SUBJECT MATTER JURISDICTION

**HAIGHT, Senior District Judge:**

### I.  INTRODUCTION

Plaintiffs Louis Ferrara, Melissa Ferrara, and New England Alpacas (collectively, "Plaintiffs") commenced this action against Defendants Ryen Munro and Tripping Gnome Farm, LLC ("Defendants"), seeking contractual damages "arising from the Defendants' refusal to pay the Plaintiffs commission on the Defendants' sale of certain alpaca[s] to non-party Pamela Brewster and her company Stillmeadow Farm, LLC," located in Stonington, Connecticut.[1]  Doc. 1 ("Complaint"), ¶ 1.  Because Plaintiffs failed to plead sufficient facts to demonstrate subject matter jurisdiction in their Complaint, the Court ordered the parties to submit Affidavits to establish their citizenship for federal diversity jurisdiction purposes.  Doc. 18 (Order, dated November 22, 2016).

---

[1]  The Court takes judicial notice that an alpaca is "a domesticated species of South American camelid," which resembles a small llama in appearance and is often bred for the wool-like fiber of its coat.  *See* https://en.wikipedia.org/wiki/Alpaca.

In addition, Plaintiffs were directed to file an affidavit to prove that their claims meet the jurisdictional minimum for diversity of citizenship jurisdiction – exceeding $75,000, exclusive of interest and costs, 28 U.S.C. § 1332(a).[2]  The alleged contractual damages in the action, without attorneys' fees, are "in no event . . . less than fifty five thousand dollars ($55,000.00)," Doc. 1, ¶ 33. That phrasing, for jurisdictional amount purposes, must be interpreted as no more than $55,000. Consequently, Plaintiffs must establish that their alleged past attorneys' fees of $25,000 and/or expected attorneys' fees of $30,000, *id.*, ¶¶ 35-36, should be considered by the Court when calculating the jurisdictional amount.  To be more precise, Plaintiffs must demonstrate a sufficient basis to include attorneys' fees totaling $20,001 to reach a claim "exceeding $75,000":  $55,000 in contract damages plus $20,001 in attorneys' fees, which equals $75,001.

In order for the Court to consider these past and/or projected attorneys' fees,  Plaintiffs must show that such fees  are both "reasonable" in amount and based in law (on contract or statutory language).  *See*, e.g., *Givens v. W.T. Grant Co.*, 457 F.2d 612, 614 (2d Cir. 1972), *vacated on other grounds*, 409 U.S. 56 (1972); *Kimm v. KCC Trading, Inc.*, 449 F. App'x 85, 86 (2d Cir. 2012).

In compliance with the Court's Order [Doc. 18],  Plaintiffs have submitted a Joint Affidavit [Doc. 22] to establish the citizenship of New England Alpacas and to demonstrate that their claims meet the jurisdictional amount via inclusion of attorneys' fees.[3]  Defendant Ryen Munro has filed an

---

[2]   In their Complaint, Plaintiffs assert diversity of citizenship as the sole basis for subject matter jurisdiction because all of their claims arise under state law, implicating no "federal question," 28 U.S.C. § 1331. Doc. 1, ¶ 2.  The claims at bar include:  breach of contract, unjust enrichment, breach of the implied covenant of good faith and fair dealing, and violation of Connecticut's Unfair Trade Practices, Conn. Gen. Stat. § 42-110a, *et seq.*

[3]   The Court notes that Plaintiffs Melissa C. Ferrara and Louis M. Ferrara filed a Joint Affidavit, which they re-filed in an amended version.  *See*  Doc. 21, 22.  The Court analyzes the amended Joint Affidavit [Doc. 22] as the operative affidavit.

2

Affidavit [Doc. 20] to establish the citizenship of Tripping Gnome Farm, LLC ("TGF").  The Court now considers these Affidavits to determine whether it has subject matter jurisdiction so that the matter may proceed.

## II.  DISCUSSION

### A.      Citizenship of the Parties

In its previous Order [Doc. 18], the Court directed an officer or owner of New England Alpacas to specify what kind of entity it is (*e.g.,* corporation, limited liability company) and to prove its state(s) of citizenship.[4]  In response, individual Plaintiffs Melissa Ferrara and Louis Ferrara now jointly assert that they are married and  "own and operate" New England Alpacas together.  Doc. 22 (Plaintiffs' Amended Affidavit), ¶ 4.  Furthermore, they clarify that "New England Alpacas" is simply a "fictitious name" used by them to conduct their business, an alpaca farm in Killingworth, Connecticut.  *Id.*  It is neither a corporation nor a limited liability company.  "New England Alpacas" is simply a "d/b/a" and "not a separate legal entity." *Id.*

Under Connecticut law, "a fictitious or assumed business name," a  d/b/a,  "is not a legal entity."  *America's Wholesale Lender v. Pagano*, 87 Conn.App. 474, 477 (2005) (holding that trial court had no subject matter jurisdiction over suit brought by d/b/a, which  was not "a person in law or a legal entity with legal capacity to sue"). Indeed, as the Connecticut Supreme Court has

---

[4]  For example, if  New England Alpacas were  a corporation, Plaintiffs would have to provide the "State by which it has been incorporated" and the State in which it has "its principal place of business," 28 U.S.C. § 1332(c)(1).  If New England Alpacas were a limited liability company, Plaintiffs would have to specify the names of  all of its members and establish the citizenship of each such member.   If any member was an individual, Plaintiffs would be required to detail the domicile of each such person – *i.e.,* her or his true, "fixed and permanent home and place of habitation," *Palazzo v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000), or  "the place to which, whenever he is absent, he has the intention of returning," *Martinez v. Bynum*, 461 U.S. 321, 331 (1983).

recognized:

> [I]t appears well settled that the use of a fictitious or assumed
> business name does not create a separate legal entity . . . [and that]
> [t]he designation [doing business as] . . . is merely descriptive of the
> person or corporation who does business under some other name. . .
> . [I]t signifies that the individual is the owner and operator of the
> business whose trade name follows his, and makes him personally
> liable for the torts and contracts of the business.

*Monti v. Wenkert*, 287 Conn. 101, 135 (2008) (quoting *Edmands v. CUNO, Inc.*, 277 Conn. 425, 454 n. 17 (2006) (citations omitted)). *See also Andreoni v. Forest City Enterprises, Inc.*, 660 F. Supp. 2d 254, 259-60 (D. Conn. 2009) (holding that d/b/a defendant "has no legal existence, and thus no citizenship, aside from that of the person or corporation who does business under [its] name") (internal quotation marks omitted).

Because it is not a legal entity, "New England Alpacas" will be removed as a named Plaintiff in this action.  Rather, the name "New England Alpacas" shall appear in the caption as "merely descriptive" of the persons who do business under its name, Melissa Ferrara and Louis Ferrara. *See Monti*, 287 Conn  at 135.  The parties whose citizenship is dispositive as Plaintiffs in this action are the two Ferraras.  Because the Ferraras were domiciled in Connecticut at the commencement of this action, they are both citizens of Connecticut.  Doc. 22, ¶ 3.

As previously alleged in the Complaint, individual Defendant Ryen Munro is, and was at all relevant times, domiciled in Maine. Doc. 1, ¶ 5.  In his Declaration, he avers that he is "a resident and citizen of Yarmouth, Maine."  Doc. 20 ("Second Declaration of Ryen Munro"), ¶ 2.  He is a citizen of Maine.

In addition, Defendant Ryen Munro declares that Defendant Tripping Gnome Farm, LLC ("TGF") is a limited liability company and that he and Ursula Munro are the only two members of

4

TGF. *Id.,* ¶¶ 1, 4. Like Ryen Munro, Ursula Munro "is a resident and citizen of Yarmouth, Maine." *Id.*, ¶¶ 4-5. In fact, both Ryen Munro and Ursula Munro reside at the same address: 67 Balsam Lane in Yarmouth, Maine. *Id.*, ¶¶ 2, 4. Because both members of TGF are citizens of Maine, TGF is a citizen of Maine. *See, e.g, Bayerische Landesbank, New York Branch v. Aladdin Capital Mgmt.*, 692 F.3d 42, 49 (2d Cir. 2012) ("a limited liability company . . . takes the citizenship of each of its members").

Therefore, based on the parties' affidavits, all Plaintiffs are citizens of Connecticut and all Defendants are citizens of Maine. There is complete diversity of citizenship between each Plaintiff and both Defendants. *See, e.g., St. Paul Fire and Marine Ins. Co. v. Universal Builders Supply*, 409 F.3d 73, 80 (2d Cir. 2005) ("Diversity is not complete if any plaintiff is a citizen of the same state as any defendant.").

### B.   Jurisdictional Amount

#### 1.   Contract

With respect to attorneys' fees and the jurisdictional amount for diversity, Plaintiffs were directed to show that the fees were both reasonable and provided for by contract or state statute. *See Givens v. W. T. Grant Co.*, 457 F.2d 612, 614 (2d Cir. 1972) (citing Wright, *Federal Courts* § 35, at 119 (1970); 1 Moore's *Federal Practice* ¶ 0.99 [2] (2d ed. 1964)). The Court first examines Plaintiffs' allegations, by Affidavit, regarding a contractual and/or statutory basis for including such fees in the jurisdictional minimum. "Attorney's fees that a plaintiff may collect under contract or under an applicable fee-shifting statute may be included in computing the jurisdictional minimum." James Wm. Moore, *et al.*, *Moore's Federal Rules Pamphlet* ¶ 1332.5[2][d] (Matthew Bender 2009). If a basis exists for finding the fees recoverable as a matter of right, the Court will determine

whether the amounts presented are reasonable.

With respect to a contractual basis, Plaintiffs have produced a copy of their alleged "Brokering and Boarding Contract" (the "Agreement") with Defendants. Doc. 22 ("Brokering and Boarding Contract"), at 11.   Plaintiffs allege in their Affidavit that the contract "[a]ttached hereto as Exhibit A is a document containing material terms of the agreement we entered with the Defendant" and "[t]ogether with a number of emails exchanged between the parties, these documents memorialize the Contract as alleged in the Complaint." Doc. 22, at ¶ 5.  They also state in their Complaint that "[o]n or about June 17, 2011, Munro accepted the Plaintiffs' offer to enter a contract which incorporated the terms of the Plaintiffs' standing Brokering and Boarding Contract, modified by the negotiations between the parties." Doc. 1, ¶ 16.

The Court notes, however, that there is a disputed issue of fact as to whether the parties actually entered a contract and whether the Agreement Plaintiffs have presented to the Court constitutes a contract between the parties.  Defendant Ryan Munro states in his initial Declaration that "[t]he Plaintiffs and the Defendant Tripping Gnome Farm, LLC never agreed on the terms of the Master Contract that was sent" and "[t]his lawsuit is based on the unsigned, draft Master Contract." Doc. 16, ¶¶ 8-9.  The alleged "Agreement," as presented by Plaintiffs, contains only the signatures of Melissa Ferrara and Louis Ferrara.  Doc. 22, p. 12.  No signature of Ryen Munro, in either his individual capacity or as manager of TGF, appears on that contract.

Furthermore, Ryen Munro contends that there were separate sales contracts between TGF and "[a] customer of the Plaintiffs" for the sale of three animals; and Plaintiffs were to receive a brokerage commission on the sale of only one animal in those contracts.  Doc. 16, ¶ 10.  Munro alleges that the sales contracts with the customer, likely Brewster, were negotiated and consummated

6

in Maine. *Id.*

"A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing *Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir.1996)).  It thus follows that the party asserting jurisdiction bears the burden of alleging "a proper basis for jurisdiction in his pleadings and must support those allegations with 'competent proof' if a party opposing jurisdiction properly challenges those allegations." *Linardos v. Fortuna*, 157 F.3d 945, 947 (2d Cir.1998).  Affidavits may be used by either party to challenge or support subject matter jurisdiction. *Antares Aircraft, L.P. v. Federal Republic of Nigeria*, 948 F.2d 90, 96 (2d Cir.1991), *vacated on other grounds*, 505 U.S. 1215  (1992). *See also Makarova*, 201 F.3d at  113 ("In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings.").

In general, the allegations contained in the complaint are accepted as true and construed  in the most favorable light for the complainant. *Atlantic Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir.1992);  *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir.1993).  However, "a factual challenge to subject matter jurisdiction allows only uncontroverted factual allegations [to be] accepted as true . . . ." *Fisher v. F.B.I.*, 94 F. Supp. 2d 213, 216 (D. Conn. 2000) (citing  *Cedars-Sinai*, 11 F.3d at 1583).

If the facts in suit are viewed most favorably for the Plaintiffs, there was a contract between the parties based on a draft Agreement (Ex. A), which although unsigned, was accepted by Defendants via a series of emails.  The Plaintiffs, however, have submitted no emails or "competent proof" in support of their statement regarding emails exchanged between the parties; and Defendant

Ryen Munro states in his Affidavit [Doc. 15] that the Agreement [Ex. A], as presented, was never entered into between the parties.[5]

The existence of the contract thus remains an issue of fact. *See, e.g., Baron v. Maxam Initiation Sys., LLC*, No. CV095005218S, 2010 WL 745495, at *3 (Conn. Super. Ct. Jan. 26, 2010) ("The existence of a contract is a question of fact to be determined by the trier on the basis of all the evidence."). "The intention of the parties manifested by their words and acts is essential to determine whether a contract was entered into and what its terms were." *Finley v. Aetna Life & Cas. Co.*, 202 Conn. 190, 199 (1987) (citation and internal quotations marks omitted). Based on the facts presented, the Court cannot determine whether the parties intended for emails between them to constitute a binding agreement under the terms of the draft Agreement, whether the parties intended that the Agreement would not become final and binding until a written agreement was fully negotiated and signed by all parties, or whether there was no contract at all. *See, e.g., Baron*, 2010 WL 745495, at *3. Absent sufficient proof of a binding contract, the Court cannot consider the terms of the alleged contract as the basis under which to include attorneys' fees in calculating the jurisdictional amount.

However, even if Plaintiffs were able to prove that the Agreement they presented was a contract between the parties, the provision regarding attorneys' fees is, in any event, too narrow to encompass all of the fees Plaintiffs seek to include in the jurisdictional amount. That cited provision regarding attorneys' fees states:

> Attorney's Fees:  In any legal proceeding arising out of this
> Agreement, the prevailing party shall be entitled to their reasonable

---

[5]  Plaintiffs are advised that if the case proceeds, they will be left to their proof that such a contract exists (*i.e.*, was agreed upon with and/or executed by Defendants).

attorney's fees and costs of suit, in addition to any other relief granted
by the Court.

*Id.*

Based on this provision, Plaintiffs assert that the following attorneys' fees should be considered as part of the jurisdictional amount in this action: approximately **$6,200** in fees for their Connecticut attorney's attempts over many months, "prior to the filing of any litigation," to "negotiate in good faith a non-judicial resolution to this matter with the Defendants' Maine attorney," Doc. 22, ¶¶14-16; **$24,000** in Connecticut attorneys' fees and **$13,000** in Maine counsel's fees in defending and securing the stay of a declaratory judgment proceeding brought by Defendants in Maine, *id.*, ¶¶ 20-21; **$36,000** in fees by Connecticut counsel in a 2014 action that Plaintiffs commenced in Connecticut Superior Court (the "2014 Action") and failed to pursue after Defendant Ryen Munro was dismissed as a defendant "on procedural grounds," *id.,* ¶¶ 25-29; **$10,000** in fees by Connecticut counsel in a pursuing a second action in Connecticut state court (the "2015 Action") under Conn. Gen. Stat. § 52-592(a), in which Ryen Munro was also dismissed as a defendant, *id.*, ¶¶ 32-35;[6] and **$33,800** in projected fees in the present action, *id.* ¶ 36.[7]

Assuming *arguendo* for the moment that the Agreement presented was a binding contract

---

[6] Plaintiffs clarify that "rather than appeal the state court's ruling [dismissing Ryen Munro as a defendant], we initiated this action so we could finally have our claims against both Defendants heard on the merits." Doc. 22, ¶ 35. In so stating, Plaintiffs assume that this Court will not grant Munro's motion to dismiss this action against him due to lack of personal jurisdiction. *See* Doc. 14.

[7] For the docket records of the Connecticut and Maine state actions, *see* Doc. 22, Ex. B (Maine declaratory judgment action, *Munro, et al. v. Ferrara, et al.*, No. PORSC-CV-2014-00157 (Maine Super. Ct. 2014) –"Stipulated Judgment" for Ursula Munro entered against Lou Ferrara, Melissa Ferrara, and New England Alpacas on 1/29/2015); Ex. C (*Ferrara, et al. v. Munro, et al.*, No. MMX-CV14-6011790-S (Conn. Super. Ct. 2014) – withdrawal of action filed on 8/28/2015); and Ex. D (*Ferrara, et al. v. Munro, et al.*, No. MMX-CV15-6013059-S (Conn. Super. Ct. 1/13/2015) (pending motion to dismiss filed by defendants on 11/23/2016).

between the parties, the Court would employ Connecticut's standard rule of contract construction to interpret the terms of the "Attorney's Fees" provision.  Specifically, Connecticut courts "accord the language employed in the contract a rational construction based on its common, natural and ordinary meaning and usage as applied to the subject matter of the contract."  *Cantonbury Heights Condo. Ass'n, Inc. v. Local Land Dev.*, *LLC*, 273 Conn. 724, 735 (2005) (citing *Alstom Power, Inc. v. Balcke-Durr, Inc.*, 269 Conn. 599, 610 (2004)).  "Where the language is unambiguous, [the court] must give the contract effect according to its terms."  *Canterbury Heights*, 273 Conn. at 735.

In the case at bar, if, as Plaintiffs allege, a contract did exist under the terms of the Agreement presented, the language comprising the "Attorney's Fees"  provision is unambiguous so must be given its natural and ordinary meaning.  The provision explicitly includes recovery of attorney's fees and costs of suit in "any legal proceeding arising out of this Agreement" in which the Plaintiffs are "the prevailing part[ies]."  Doc. 22, at 11.  In other words, under this provision, the legal fees and costs in a particular proceeding in which Plaintiffs prevail under the Agreement are recoverable as damages *in that action*.  The provision makes no mention of cumulative fees in other, preceding actions, much less fees accrued in pre-filing negotiations.  It  provides no coverage in  actions in which Plaintiffs have not prevailed.[8]

Therefore, even if the Agreement presented were a proven contract between the parties, under the terms of the "Attorney's Fees" provision, Plaintiffs could not recover their attorneys' fees in the prior Maine or Connecticut state proceedings.  They also could not recover their counsel's fees for pre-litigation negotiations in Maine, which Plaintiffs themselves call negotiations "in good faith

---

[8]  The Court need not speculate as to whether Plaintiffs will  prevail and/or recover legal fees and costs in any pending state action.  Such matters are not before this Court.

[seeking] a non-judicial resolution to this matter with the Defendants' Maine attorney."   Doc. 22, ¶¶ 14-16.

In sum, under the contractual provision presented, the only attorneys' fees Plaintiffs could conceivably recover in the present federal action would be those incurred in this action *if* Plaintiffs were to *prevail and* the amounts were *reasonable*.  Because the existence of a binding contract has not been proven, however, the Court turns to Plaintiffs' second potential legal basis to warrant recovery of attorneys' fees, a Connecticut statute.  Only in the event of a proven legal basis will the Court address "reasonableness" of projected attorneys' fees in this action.

### 2.    Statutory Provision

Plaintiffs next point to Count Five of their Complaint to argue that Connecticut's Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110b(a),  permits recovery of their past and projected attorneys' fees.  *See* Doc. 22, ¶¶ 9-11. That statute provides: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. St. § 42–110b(a). "Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42–110b, may bring an action" to recover actual damages, punitive damages, and equitable relief.  Conn. Gen. Stat. § 42–110g(a).

In the case at bar, Plaintiffs allege that Defendants deceived them into disclosing the name of an interested alpaca buyer "by falsely leading the Plaintiffs to believe that if [they] did so, the Defendants would pay [them] the commissions set forth in the Contract."  Doc. 1, ¶ 64.  Then, by "refusing to pay the agreed-to commissions, and by Munro preventing TGF from doing so, the Defendants gained an unfair business advantage over the Plaintiffs and all other similar businesses

in that the Defendants illegally and unfairly made their products and services cheaper to sell to Connecticut residents." *Id.*, ¶ 65.  Plaintiffs allege that Defendants' conduct has been "immoral, unethical, oppressive, . . . unscrupulous," and offensive to public policy. *Id.*, ¶ 68.  Such actions have allegedly constituted "unfair methods of competition or unfair or deceptive acts or practices," violating CUTPA, Conn. Gen. Stat. § 42-110b, and proximately causing Plaintiffs to suffer "an ascertainable injury and loss" of business revenues. *Id.,* ¶¶ 69-70.

As a matter of law, as described above, in order to establish a CUTPA violation, a plaintiff must demonstrate that he/she was injured by "unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b(a).  In addition, the Connecticut courts have clarified that CUTPA may "apply to a single act of misconduct."  *Johnson Elec. Co. v. Salce Contracting Assocs., Inc.,* 72 Conn. App. 342, 351 (2002). *See, e.g.*, *Daddona v. Liberty Mobile Home Sales, Inc.*, 209 Conn. 243, 259 (1988) (holding that the single act of dismantling a mobile home violated CUTPA where defendant acted deceptively in claiming that it did not know that plaintiff was a resident of the mobile home).[9]

A deceptive practice violates CUTPA if it is liable to cause "substantial injury to consumers (or competitors or other businessmen)." *De La Concha of Hartford, Inc. v. Aetna Life Ins. Co.*, 269 Conn. 424, 434 (2004).  "[A]  violation of CUTPA may be established by showing either an actual deceptive practice . . . or a practice amounting to a violation of public policy. . . . Whether a practice

---

[9]  The Connecticut Appellate Court has clarified that the requirement that the defendant engage in "similar types of unfair or deceptive practices with more individuals than just the plaintiffs" is  "limited to the specific situation in which a plaintiff has alleged violations of CUTPA and the Connecticut Unfair Insurance Practices Act (CUIPA), General Statutes § 38a–815 *et seq.*, against an insurer on the basis of conduct that constitutes an unfair claim settlement practice as defined in General Statutes § 38a–816 (6)." *Hart v. Carruthers*, 77 Conn. App. 610, 618 (2003).

is unfair and thus violates CUTPA is an issue of fact. . . . The facts found must be viewed within the context of the totality of circumstances which are uniquely available to the trial court." *Id.* (quoting *Ancona v. Manafort Bros., Inc.*, 56 Conn. App. 701, 714–15 (2000), *cert. denied,* 252 Conn. 953 (2000)).

In the instant case, reading the allegations of Count Five liberally and favorably to Plaintiffs at this time, the Court finds that Plaintiffs have alleged what appears to be a plausible claim under CUTPA.[10]  Plaintiffs have alleged deceptive conduct on the part of Defendants to gain access to the name of an interested customer/buyer and then to sell that buyer alpacas at a reduced rate, thereby undercutting Plaintiffs' business (causing substantial financial injury).

Under the CUTPA statute, a prevailing party may recover legal fees.  CUTPA  provides for the award of  "in addition to the relief provided in this section, costs and reasonable attorneys' fees based on the work reasonably performed by an attorney and not on the amount of the recovery." Conn. Gen. Stat. § 42-110a(d).  The attorneys' fees recoverable in a CUTPA action are those reasonable fees incurred in that particular action (*i.e.*, as opposed to a series of other legal actions) if the plaintiff prevails.  "[T]he public policy underlying CUTPA is to encourage litigants to act as private attorneys general and to engage in bringing actions that have as their basis unfair or deceptive trade practices." *Gebbie v. Cadle Co*., 49 Conn. App. 265,  279-80 (2009).  In an effort "to encourage attorneys to accept and litigate CUTPA cases, the legislature has provided for the award

---

[10]  The United States Supreme Court has articulated that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

of attorney's fees and costs." *Id.* (citation omitted).   There is no provision in CUTPA entitling plaintiffs to attorneys' fees in previous litigation.

Finally, even if Plaintiffs may potentially recover attorneys' fees as prevailing parties in this CUTPA action, the Court may only consider "reasonable" attorneys' fees when calculating the jurisdictional amount.  In certain cases where attorneys' fees equaled or exceeded the amount of base damages sustained, courts have been inclined to find such fees unreasonable.[11]

At one point, Plaintiffs themselves conceded in their 2014 Connecticut state action, "we understood that we were paying more to litigate [in that action] than the base amount we were suing to recover, [but] because we have contractual and statutory claims to recover our fees and cost[s], continuing to trial was our only hope of recovering anything." Doc. 22, ¶ 29.  If they now understand that attorneys' fees in prior litigation are not recoverable, Plaintiffs may themselves  decide that it is not reasonable to press on, incurring litigation fees in a new action which may soon approach, or eventually exceed, the base amount of damages.  In other words, at some point, Plaintiffs' cumulative attorneys' fees may seem unreasonable even to them.

### 3.    Court's Findings

The Court concludes that the only attorneys' fees which may be considered with respect to the jurisdictional amount are those incurred and reasonably projected *in this action*. If reasonable, such fees may be recovered pursuant to CUTPA should Plaintiffs prevail under their CUTPA

---

[11] *See, e.g., Diamond D. Enterprises USA, Inc. v. Steinsvaag*, 979 F.2d 14, 19 (2d Cir.1992) (with respect to reasonableness, "[t]he rule in New York is that an award of fees in excess of the amount involved in a litigation would normally appear to be unreasonable") (citation and internal quotation marks omitted).

14

claim.[12]

As to those fees, Plaintiffs state that their attorney has provided the following "estimated litigation budget of $33,800 to bring this action to trial and verdict":

  a.    $1,950 for document discovery (6 hours);

  b.    $9,750 for depositions (6 depositions estimated, 4 hours each, plus prep, 30 hours);

  c.    $5,200 for pretrial motion practice, including defending motion to dismiss and summary judgment (16 hours);

  d.    $6,500 for trial/witness preparation (20 hours);

  e.    $2,600 for jury selection/trial management conference (8 hours); and

  f.    $7,800 for trial (24 hours).[13]

Doc. 22, ¶ 36.

As discussed in the Court's previous Order [Doc. 18], there is "a rebuttable presumption" that the plaintiff has correctly represented "the actual amount in controversy" on the face of the complaint. *Wolde–Meskel v. Vocational Instruction Project Cmty. Servs., Inc.,* 166 F.3d 59, 63 (2d Cir.1999). *See also Colon v. Rent-A-Ctr., Inc.*, 13 F. Supp. 2d 553, 558 (S.D.N.Y. 1998) ("the

---

[12] If the Plaintiffs prove that the alleged Agreement exists and is binding on Defendants, and if Plaintiffs ultimately prevail in this action, they may also recover reasonable attorneys' fees per the provisions of that contract. At this time, the Court cannot make a factual determination about the existence *vel non* of that contract.

[13] The Court notes that the Connecticut attorney representing Plaintiffs bills all proposed legal work at the rate of $325 hour, which falls approximately in the middle of the billing spectrum for legal fees in Connecticut. Doc. 22, ¶ 15. In addition, Plaintiffs are advised that at the conclusion of a case, the Second Circuit requires the prevailing party to present detailed records of attorneys' fees prior to awarding them as "reasonable" damages. *See* n.14, *infra*.

15

amount in controversy is measured strictly from the plaintiff's viewpoint, without regard to the amount at stake for any other party") (citation omitted), *cert. denied*, 409 U.S. 983 (1972). However, for purposes of the jurisdictional amount, due to Plaintiffs' estimated loss of commissions in an amount not "less than fifty five thousand dollars ($55,000.00)," Doc. 1, ¶ 33, the Court need only consider attorneys' fees in excess of approximately $20,000 to reach the mandatory minimum of "in excess of $75,000, exclusive of interest and costs," 28 U.S.C. § 1332(a). In calculating the jurisdictional amount, the Court need not factor in the full $33,800 in projected attorneys' fees nor determine whether that total amount would be reasonable.

A plaintiff's estimation of his damages in his Complaint is presumptively acceptable for jurisdictional purposes at the pleading stage. In the case at bar, at least $20,001 of Plaintiffs' estimated attorneys' fees, when broken down into approximate hours and legal work to be performed, passes muster at the pleading stage. Such an amount, when added to the alleged $55,000 in contractual damages, is sufficient for the Court to find that the jurisdictional amount has been met.[14]

C.    **Potential Issue of Abstention**

Finally, the Court notes that the currently pending 2015 Action in Connecticut State Court, *Ferrara, et al. v. Munro, et al.*, Case No. MMX-CV15-6013059-S (Conn. Super. Ct. 2015), is substantially identical to the one before this Court. That state action commenced between the same

---

[14] Plaintiffs are advised that even if they prevail and become entitled to recover attorneys' fees, detailed submissions by Plaintiffs' counsel would be required in the Second Circuit. In particular, counsel must file contemporaneous time records, describing the names of the attorneys and the services rendered, in compliance with the Second Circuit's articulated requirements in *New York Association of Retarded Children v. Carey*, 711 F.2d 1136, 1148 (2d Cir.1983). *See, e.g., Trustees of the I.B.E.W. Local Union No. 488 Pension Fund v. Norland Elec., Inc.*, No. 3:11-CV-709, 2015 WL 3581011, at *1 (D. Conn. June 5, 2015).

16

litigants; and the Complaint contains four of the five claims that appear in the federal action at bar.[15] These claims include:   breach of contract, unjust enrichment, breach of the covenant of good faith and fair dealing, and violation of Connecticut's Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a, *et seq.  See* Conn. Case No. MMX-CV15-6013059-S, Doc. 179 ("Amended Complaint" dated Jan. 2, 2017).

In exceptional circumstances, a federal court may find it necessary to dismiss or stay an action through the doctrine of abstention if there are concurrent state proceedings.   *Connecticut Fund for Env't, Inc. v. Upjohn Co.*, 660 F. Supp. 1397, 1404–05 (D. Conn. 1987) (citing *United States v. Cargill*, 508 F. Supp. 734, 748 (D.Del. 1981).  In such limited cases, abstention principles may rest on considerations of "(w)ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).

"[U]nder the *Colorado River* doctrine, the concurrent state and federal actions must be parallel." *Larobina v. Comm'r of Transp.,* No. 3:03-CV-217(EBB), 2005 WL 2789321, at *4 (D. Conn. Oct. 26, 2005) (citing *Dittmer v. Cnty. of Suffolk*, 146 F.3d 113, 118 (2d Cir.1998)). "Suits

---

[15]  The additional count in the federal action is a state claim for "tortious interference with contractual relations" against Ryen Munro.

On the docket of the state case, upon motion by the Defendants, Superior Court Judge Aurigemma dismissed the action against Ryen Munro because the Plaintiffs failed to establish that the Court had personal jurisdiction over him pursuant to Conn. Gen. Stat.§ 52-59b (a)(1) and (a)(3). Munro testified by affidavit that he did not transact business in Connecticut, nor did he regularly solicit business in Connecticut.  Had the Plaintiffs included the "tortious interference" claim in the state action, it would thus have been dismissed anyway.

In this federal action, Defendants have also filed a motion to dismiss the case against Ryen Munro for lack of personal jurisdiction [Doc. 14].  Upon a determination that the Court has subject matter jurisdiction, the Court will address that motion.

are parallel when substantially the same parties are contemporaneously litigating substantially the same issue in another forum."  *Larobina*, 2005 WL 2789321, at \*4 (quoting *Dittmer*, 146 F.3d at 118).

"To determine whether abstention under *Colorado River* is appropriate, a district court is required to weigh six factors, with the balance heavily weighted in favor of the exercise of jurisdiction." *Village of Westfield v. Welch's*, 170 F.3d 116, 121 (2d Cir.1999) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983)).  The factors are:

> (1) the assumption of  jurisdiction by either court over any res or property;
>
> (2) the inconvenience of the federal forum;
>
> (3) the avoidance of piecemeal litigation;
>
> (4) the order in which jurisdiction was obtained;
>
> (5) whether state or federal law supplies the rule of decision; and
>
> (6) whether the state court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction.

*Id.  See also Bradley v. Kelly*, 479 F. Supp. 2d 281, 285 (D. Conn. 2007); *Connecticut Fund for Env't, Inc. v. Upjohn Co.*, 660 F. Supp. 1397, 1404–05 (D. Conn. 1987).[16]

The present case is stayed pending this Court's determination on subject matter jurisdiction. However, suffice it to say, as Defendants have asserted in their "Motion to Dismiss" [Doc. 14],  there are factors present which favor abstention.  The concurrent cases in state and federal court may result

---

[16]  In the context of declaratory judgment, *see also Wilton v. Seven Falls Co.*, 515 U.S. 277, 290 (1995) (affirming Fifth Circuit in upholding district court's decision to stay action for declaratory relief  "where parallel proceedings, presenting opportunity for ventilation of the same state law issues, were underway in state court").

in "piecemeal litigation;" this action was brought in federal court after the state action was commenced; all four claims presented are state law claims; and the state court action is likely adequate to protect the interests of the parties. *See, e.g., Telesco v. Telesco Fuel and Masons' Materials, Inc.*, 765 F.2d 356 (2d Cir.1985) (affirming district court's dismissal of federal diversity action in favor of concurrent state action under the *Colorado River* doctrine where federal complaint concerned same events and sought same relief as state court action, federal law did not provide the rule of decision, the two state actions were filed over four and one-half years and two years prior to the federal action and the Court noted the "vexatious" nature of the federal suit).

As Defendants have noted in the their Memorandum [Doc. 15] in support of their "Motion to Dismiss" [Doc. 14], should this case continue, the issues of both personal jurisdiction and federal abstention must be addressed before any substantive matters may be resolved.[17] In such a situation,

---

[17] Defendants have stated in their supporting memorandum:

> Dismissal is also appropriate under federal abstention principles, because it is clear that the case at issue is simply a place holder. Defendants should not have to incur still more time and expense defending yet another version of the same case and continuing to fight jurisdictional battles that have already been fought and resolved.

Doc. 15, at 2.

Alternatively, Defendants seek dismissal of the action under the "prior pending action" doctrine. *See Ragan v. Merch. Transfer & Warehouse Co., Inc.*, 337 U.S. 530, 533 (1949) (when a cause of action "is created by local law, the measure of it is to be found only in local law" so that "[w]here local law qualifies or abridges [a state action], the federal court must follow suit"). *See also Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) ("except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state" and "whether the law of the state shall be declared by its Legislature in a statute or by its highest court in a decision is not a matter of federal concern"). As Defendants summarize, "a federal court sitting purely in diversity cannot confer additional rights upon a party that the party would not enjoy in state court. Put another way, if Connecticut law entitles the Defendants to dismissal in a Connecticut state court, it entitles them to dismissal in a Connecticut federal court." Doc. 15, at 10.

with litigation expenses accruing in both the state and federal actions, the parties may wish to take the opportunity to  resolve this matter themselves, perhaps by jointly requesting a settlement conference before a Magistrate Judge.

### III.  CONCLUSION

Based on the Affidavits presented by the parties, the Court finds that "diversity of citizenship" subject matter jurisdiction exists in this case, 28 U.S.C. § 1332(a).  Plaintiffs Melissa and Louis Ferrara  have Connecticut citizenship, which is diverse from the Maine citizenship of Defendant Ryen Munro and Tripping Gnome Farm, LLC.

As Plaintiffs jointly assert, Plaintiff "New England Alpacas" is simply a "fictitious name" used by individuals Melissa Ferrara and Louis Ferrara to conduct the business of an alpaca farm in Killingworth, Connecticut. Doc. 22, ¶ 4. " New England Alpacas" is thus neither a corporation nor a limited liability company.  It is not a separate legal entity so that only Melissa Ferrara and Louis Ferrara are the Plaintiffs in this action.  It is the citizenship of these individuals that must be considered for Plaintiffs' state(s) of citizenship. Because both Ferraras were domiciled in Connecticut at the commencement of this action, they are citizens of Connecticut.

As previously alleged in the Complaint, individual Defendant Ryen Munro is, and was at all relevant times, domiciled in Maine. He is thus a citizen of that state.  Defendant Tripping Gnome Farm, LLC, is a citizen of the state of its two members, Ryen Munro and Urula Monro, who are both citizens of Maine.  Doc. 20, ¶¶ 2, 5.

Finally, due to the presence of a CUTPA claim in this action, the Court will consider an amount of just over $20,000 in Plaintiffs' projected attorneys' fees as potential damages for purposes of calculating the jurisdictional amount.  The Court adds this portion of the  projected attorneys' fees

to Plaintiffs' asserted damages in commissions owed of "at least $55,000" to find that the "matter in controversy exceeds the sum or value of $75,000." The amount of $20,001 in legal fees is deemed "reasonable" at this time in that Plaintiffs have detailed hours and various aspects of legal work that comprise it. However, even if Plaintiffs prevail, such fees may later be found "unreasonable" under the Second Circuit's strict test for reasonableness unless they are properly documented, demonstrating they are not excessively high. *See* n.14, *supra*.

Having determined that subject matter jurisdiction exists, the Court finds that the action may proceed. The stay is lifted. As previously stated, for "good cause shown," the Court resets the deadline by which Plaintiffs must respond to Defendants' Motion to Dismiss. [Doc. 14]. Accordingly, Plaintiff must respond to Defendants' Motion to Dismiss on or before **February 3, 2017.** *See* D. Conn. L. Civ. R. 7(a), (b). Defendants may thereafter, if so advised, reply "within fourteen (14) days of the filing of the responsive brief" by Plaintiffs. *Id.* 7(d).

The parties are advised that they must meet and confer, and within fourteen days thereafter, file their joint "Rule 26(f) Report of Parties' Planning Meeting," with proposed dates for the remaining case deadlines. *See* Fed. R. Civ. P. 16(b), 26(f); D. Conn. L. Civ. R. 16. The 26(f) Report must be filed no later than **February 24, 2017.**

The Court notes the highly contentious nature of the long-standing legal battles which have ensued between the parties. As described by Plaintiffs, "[t]he dispute between the Defendants and us has been a long and nasty one, generating multiple court cases." Doc. 22, ¶ 12. Similarly, Defendants, in their Memorandum in support of their Motion to Dismiss, describe the present case

as "no more than the latest harassing effort to pursue Ryen Munro."[18]  Doc. 15, at 2.  Needless to say, animosity between the parties appears to have fueled the numerous proceedings in which the attorneys, whose fees continue to grow, have been the only clear winners.

At this rate, attorneys' fees on both sides may substantially exceed the amount of commissions allegedly owed by Defendants to the Plaintiffs.  In the interest of justice and expeditious resolution of this protracted legal war, the parties are advised that they may jointly seek referral to a Magistrate Judge for a settlement conference.  It appears that months, if not years, have elapsed since the parties have engaged in attempted negotiations.  Perhaps renewing such

---

[18]  Defendants describe the tortured history of  prior cases between the parties as follows:

Since 2014, there have been four cases between Defendants and Plaintiffs regarding this fairly straightforward and relatively small dispute: (1) an action that Tripping Gnome filed in the Cumberland County, Maine Superior Court (PORSC-CV-2014-00157), seeking a declaratory judgment with respect to the parties' rights and obligations (the "Maine Case"); (2) an action that Plaintiffs subsequently filed in Connecticut Superior Court (MMX-CV14-6011790-S) (the "First Connecticut Case"), as a result of which the Maine Case was stayed; (3) *another* action that Plaintiffs filed in Connecticut Superior Court (MMX-CV15-6013059-S) (the "Pending Connecticut Case"), which is nearly identical to both the First Connecticut Case and the instant case and which was filed after rulings adverse to Plaintiffs in the First Connecticut Case, thus allowing Plaintiffs to continue to pursue essentially the same case regardless of those adverse rulings; and (4) now, the present case.  Today, three of these cases – all but the First Connecticut Case, which Plaintiffs voluntarily withdrew after filing the Pending Connecticut case  – remain.

Doc. 15, at 1-2 (emphasis in original).

negotiations at this time would be useful and beneficial to all concerned.

It is So ORDERED.

Dated:   New Haven, Connecticut
            January 13, 2017

                                        /s/Charles S. Haight, Jr.
                                        CHARLES S. HAIGHT, JR.
                                        Senior United States District Judge

23